UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| SHEILA WALKER-BECKETT, | ) | Case No. CV 05-1737-JTL |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MEMORANDUM OPINION AND ORDER |
| | ) | |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| Defendant. | ) | |
| ———————————————— | ) | |

On March 10, 2005, Sheila Walker-Beckett ("plaintiff") filed a Complaint seeking review of the Commissioner's denial of plaintiff's application for social security disability insurance benefits. On April 20, 2005, the parties filed a Consent to Proceed Before United States Magistrate Judge Jennifer T. Lum. Thereafter, on September 19, 2005, defendant filed an Answer to Complaint. On December 6, 2005, the parties filed their Joint Stipulation.

The matter is now ready for decision.

///

///

**BACKGROUND**

On March 12, 2002, plaintiff filed an application for disability insurance benefits. (Administrative Record ["AR"] at 56-58). In her application, plaintiff claimed that, beginning on January 17, 2001, her stress, hypertension, major depression, insomnia, back, head and neck pain, and mood swings prevented her from working. (AR at 62). The Commissioner denied plaintiff's application for benefits both initially and upon reconsideration. (AR at 42-45, 47-50). Thereafter, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR at 51).

On October 22, 2003, the ALJ conducted a hearing in Lancaster, California. (AR at 673-91). Plaintiff appeared at the hearing with counsel and testified. (AR at 677-86). Gregory Jones, a vocational expert, also testified. (AR at 686-90).

On December 31, 2003, the ALJ issued his decision denying benefits. (AR at 20-26). In his decision, the ALJ found that plaintiff suffers from impairments of high blood pressure, lumbar strain/sprain, and depression, but that these impairments did not meet or equal any of the criteria contained in the Commissioner's Listing of Impairments, 20 C.F.R. Section 404, Subpart P, Appendix 1. (AR at 24). The ALJ also found that although plaintiff could not perform her past relevant work, she retained the residual functional capacity to perform a full range of medium work. (Id.). Such jobs include work as a gate guard, hand packager, packing line worker, parking lot attendant, or stuffer. (AR at 25). Ultimately, the ALJ found that plaintiff was not disabled pursuant to the Social Security Act. (Id.).

1    On February 5, 2004, plaintiff filed a request with the Appeals

2  Council for review of the ALJ's decision.  (AR at 14).  On January 12,

3  2005, the Appeals Council affirmed the ALJ's decision.  (AR at 6-9).

4

5                          **PLAINTIFF'S CONTENTIONS**

6    Plaintiff makes the following claims in the parties' Joint

7  Stipulation:

8    1.   The ALJ erred in failing to find that plaintiff met Listing

9  12.05(C).

10    2.   The ALJ erred in finding that plaintiff could perform work

11  at Step 5 of the sequential evaluation process.

12

13                          **STANDARD OF REVIEW**

14    The Court reviews the ALJ's decision under 42 U.S.C. § 405(g) to

15  determine whether the ALJ's findings are supported by substantial

16  evidence and whether the proper legal standards were applied.  DeLorme

17  v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991).  Substantial evidence

18  means "more than a mere scintilla" but less than a preponderance.

19  Richardson v. Perales, 402 U.S. 389, 401 (1971); Desrosiers v.

20  Secretary of Health & Human Servs., 846 F.2d 573, 575-76 (9th Cir.

21  1988).

22    Substantial evidence is "such relevant evidence as a reasonable

23  mind might accept as adequate to support a conclusion."  Richardson,

24  402 U.S. at 401.  This Court must review the record as a whole and

25  consider adverse as well as supporting evidence.  Green v. Heckler,

26  803 F.2d 528, 529-30 (9th Cir. 1986).  Where evidence is susceptible

27  of more than one rational interpretation, the ALJ's decision must be

28

1  upheld.  <u>Gallant v. Heckler</u>, 753 F.2d 1450, 1452 (9th Cir. 1984).

2

3                              **DISCUSSION**

4  **A.   <u>The ALJ's Determination That Plaintiff's Impairments Do Not Meet</u>**

5       **<u>Listed Impairment 12.05(C)</u>**

6       Plaintiff contends that the ALJ erred in determining that her

7  impairments do not meet or equal any Listed Impairment.  <u>See</u> 20 C.F.R.

8  § 416.925(a).   According to plaintiff, however, her medical records

9  show that her mental impairment meets or equals Listed Impairment

10 12.05(C).[1]  <u>See</u> 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05.  As

11 _____

12       [1]  Listed Impairment 12.05 states,

13 12.05 Mental Retardation and Autism:
   Mental retardation refers to a significantly subaverage
14 general intellectual functioning with deficits in adaptive
   behavior initially manifested during the developmental
15 period (before age 22). (Note: The scores specified below
   refer to those obtained on the WAIS, and are used only for
16 reference purposes. Scores obtained on other standardized
   and individually administered tests are acceptable, but the
17 numerical values obtained must indicate a similar level of
   intellectual functioning.) Autism is a pervasive
18 developmental disorder characterized by social and
   significant communication deficits originating in the
19 developmental period.

20
   The required level of severity for this disorder is met
21 when the requirements in A, B, C, or D are satisfied.

22 A. Mental incapacity evidenced by dependence upon others
   for personal needs (e.g., toileting, eating, dressing, or
23 bathing) and inability to follow directions, such that the
   use of standardized measures of intellectual functioning is
24 precluded;

25 OR

26
   B. A valid verbal, performance, or full scale IQ of 59 or
27 less;

28 OR

                                            (continued...)

                                    4

discussed below, the Court agrees.

The Commissioner's Listing of Impairments sets forth certain impairments which are presumed to be of sufficient severity to prevent the performance of work.  See 20 C.F.R. § 416.925(a).  If a claimant has an impairment or combination of impairments medically equivalent to one in the Listing of Impairments, disability is presumed and benefits are awarded.  See 20 C.F.R. § 416.920(d).  A claimant has the burden of proving disability, including disability based on the Listing of Impairments.  See Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir.), cert. denied, 517 U.S. 1122 (1996).  "For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria.  An impairment that manifests only some of

---

[1](...continued)
C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing additional and significant work-related limitation of function;

OR

D. A valid verbal, performance, or full scale IQ of 60 through 70, or in the case of autism, gross deficits of social and communicative skills, with either condition resulting in two of the following:

1. Marked restriction of activities of daily living; or

2. Marked difficulties in maintaining social functioning; or

3. Deficiencies of concentration, persistence or pace resulting in frequent failure to complete tasks in a timely manner (in work settings or eleswhere); or

4. Repeated episodes of deterioration or decompensation in work or work-like settings which cause the individual to withdraw from that situation or to experience exacerbation of signs and symptoms (which may include deterioration of adaptive behaviors).

those criteria, no matter how severely, does not qualify." <u>Sullivan v. Zebley</u>, 493 U.S. 521, 530, (1990). "For a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, he must present medical findings equal in severity to all the criteria for the one most similar listed impairment. . . . A claimant cannot qualify for benefits under the 'equivalence' step by showing that the overall functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment." <u>Zebley</u> 493 U.S. at 531.

Plaintiff claims that her mental impairment meets or equals Listed Impairment 12.05(C). In order to qualify as mentally retarded under Listing 12.05(C), plaintiff must satisfy three prongs: (1) she must have a valid verbal, performance, or full scale IQ of 60 through 70; (2) she must have either a physical or other mental impairment imposing additional and significant work-related limitation of function; and (3) her mental retardation must have initially manifested before the age of 22. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05.

Here, plaintiff has satisfied all three prongs. First, a consultative psychologist, Leslie A. Roman, Ph.D., established that plaintiff possessed a verbal I.Q. score of 61 according to the Wechsler Adult Intelligence Scale-III test. (AR at 272). Second, the ALJ made the finding that plaintiff suffered from high blood pressure, lumbar strain/sprain, and depression. (AR at 24). Although the ALJ determined that these impairments did not meet or equal a listing, the Court finds that these impairments, nonetheless, impose significant work-related limitations of function, in accordance with Listing

12.05(C).[2]  Significantly, defendant does not appear to dispute that these additional impairments create work-related limitations. Finally, plaintiff contends that, absent evidence of any sudden trauma, there exists a rebuttable presumption that her I.Q. has remained constant since she was 22, in accordance with Listing 12.05(C).  See Hodges v. Barnhart, 276 F.3d 1265, 1268 (11th Cir. 2001) (absent evidence of sudden trauma that can cause retardation, the I.Q. tests create a rebuttable presumption of a fairly constant I.Q. throughout claimant's life).  Indeed, the Court's review of the medical records indicates no traumatic event that would have caused plaintiff's I.Q. score to drop suddenly.  Moreover, in her application for disability, plaintiff reported that she was enrolled in a special education program in elementary school and that she had received vocational rehabilitation.  (AR at 68).  Such evidence, in conjunction with the lack of any traumatic event in her life, is sufficient to support a presumption that plaintiff manifested deficits in behavior before age 22.

Defendant responds that while Dr. Roman assessed plaintiff with

---

[2]  Internist Robert E. Schatz, M.D., diagnosed plaintiff with elevated blood pressure and increased aortic sound and recommended that she be precluded from work environments involving undue stress and exposure to dust, smoke, exhaust fumes, and chemical and cleaning materials.  (AR at 347). Orthopedic surgeon, Vincent C. Kent, M.D., found that plaintiff's lower back disability precluded heavy work and that she had lost approximately fifty percent of her pre-injury capacity for lifting, bending, stooping, pushing, pulling, climbing, and other activities involving comparable physical effort.  (AR at 384). Herbert Marshak, M.D., and Matthew Maibuam, Ph.D., diagnosed plaintiff with major depressive disorder, characterized by severe depression, low energy, ease of fatigue and exhaustion, a low capacity to start doing things, sleeplessness, impaired concentration and attention capacity, diminished capacity to enjoy non-work situations, feelings of diminished self-worth, anxiety, and feelings that she might not feel better in the future.  (AR at 218, 221).

an I.Q. score of 61, Dr. Roman did not make a diagnosis of mental retardation.  Significantly, Dr. Roman opined that plaintiff was able to perform simple, repetitive tasks and detailed and complex tasks. (AR at 273).  Defendant points out that nothing in plaintiff's medical record indicates that she has ever been diagnosed or suspected of suffering from mental retardation.  No other doctor who examined plaintiff made a diagnosis of retardation either.  Herbert Marshak, M.D., and Matthew Maibuam, Ph.D., examined plaintiff in connection with a workers' compensation claim and opined that plaintiff appeared to be "functioning at an above average intellectual level, with a fund of knowledge appropriate for age, sex, educational level, and life experience." (AR at 205).  Finally, defendant notes that the ALJ may reject plaintiff's I.Q. scores as inconsistent with the record. Defendant notes that plaintiff's low I.Q. score was inconsistent with her reported daily functions, which included caring for her nine children, caring for her personal needs, performing some household functions, reading, driving a car, attending doctors' appointments, and attending church.  (Joint Stip. at 8-9).

No physician who examined plaintiff found her mentally retarded. Although Dr. Roman opined that plaintiff could sustain employment, her measure of plaintiff's I.Q. score effectively rendered plaintiff disabled under Listing 12.05(C).  While Drs. Marshak and Maibuam also opined that plaintiff could function appropriately, as noted by defendant, both physicians evaluated plaintiff in connection with her worker's compensation claim.  California's guidelines for work capacity, however, are not conclusive in a social security case.  See Desrosiers v. Secretary of Health & Human Serv., 846 F.2d 573, 576 (9th Cir. 1988); see also Macri v. Chater, 93 F.3d 540, 543-44 (9th

Cir. 1996).   In fact, the Ninth Circuit has recognized the dramatic differences between workers' compensation categories and those of the Social Security Act.   See Desrosiers, 846 F.2d at 576 (stating that, in contrast to Social Security disability findings, California's workers' compensation categories are not based on strength, but on whether claimant sits, stands, or walks for majority of day); see also Payan v. Chater, 959 F. Supp. 1197, 1202-03 (C.D. Cal. 1996) (noting same).   Given the fact that the only physician who evaluated plaintiff's mental capacity in connection with her social security application effectively found her disabled, the Court rejects defendant's contention that the opinions of the worker's compensation physicians have substantial bearing on her claim.

Finally, defendant argues that the ALJ may reject Dr. Roman's I.Q. assessment as inconsistent with other evidence in the record of plaintiff's daily activities and behavior.   Specifically, defendant notes that plaintiff's daily functions included caring for her nine children, caring for her personal needs, performing some household chores, shopping for groceries, clothes, and school supplies, helping her children with their school work, paying her own bills, reading the Bible and newspaper, driving a car, attending doctors' appointments, and attending church. (Joint Stip. at 8-9).   In a Pain Questionnaire, plaintiff reported that she attends church, watches television, and assists her children with "shelter," some school work, and transportation. (AR at 81).   Plaintiff's husband, Raymond Beckett, reported in a Daily Activities Questionnaire that he did all the cooking for the family and that plaintiff shopped for school supplies, groceries, and clothes once a month with the his help and the help of a daughter. (AR at 85).   Mr. Beckett also reported that plaintiff

1 managed her own bills, and that she did dishes and laundry with help.

2 (AR at 86).   At the hearing, plaintiff testified that her older

3 children help care for her other children and that her children

4 perform the household chores.   (AR at 679-80).   Plaintiff further

5 testified that she does not cook and that the only activities that she

6 performs is making her bed and attending church on Sundays.   (AR at

7 681).  Thus, the record indicates that plaintiff can perform a limited

8 amount of household functions and that many of these activities she

9 performs requires the help of others.   Plaintiff's limited activities

10 are not sufficient to rebut Dr. Roman's assessment of plaintiff's I.Q.

11 score.[3]

12 ///

13        Overall, the Court finds that Dr. Roman's assessment effectively

14

15        [3]   Even if plaintiff could perform the aforementioned tasks,
16 such abilities do not necessarily translate into a work setting.
   With respect to daily activities, courts have found that a
17 plaintiff must be able to spend a "substantial part of the day
   engaged in pursuits involving the performance of physical
18 functions that are transferable to a work setting" in order to
   discredit allegations of disability. Vertigan v. Halter, 260 F.3d
19 1044, 1049 (9th Cir. 2001) (emphasis in original) (citing Morgan,
   169 F.3d at 600); see also Fair v. Bowen, 885 F.2d 597, 603 (9th
20 Cir. 1989).  Here, the record indicates that plaintiff performs
   limited tasks and frequently requires assistance.
21        The Ninth Circuit in Fair cautioned that "many home
   activities are not easily transferable to what may be the more
22 grueling environment of the workplace, where it might be
   impossible to periodically rest or take medication."  Fair, 885
23 F.2d at 603.  The Ninth Circuit has found that some of the same
   activities, namely grocery shopping, driving a car, or limited
24 walking for exercise, do not "in any way detract from [a
   claimant's] credibility as to [her] overall disability."
25 Vertigan, 260 F.3d at 1050; see also Howard v. Hecklar, 782 F.2d
   1484, 1488 (9th Cir. 1986) (claim of pain-induced disability not
26 gainsaid by capacity to engage in periodic travel); Gallant v.
   Hecklar, 753 F.2d 1450, 1453 (9th Cir. 1984) (ordering award of
27 benefits for constant back and leg pain despite claimant's
   ability to cook meals and wash dishes).
28

determined that plaintiff met Listed Impairment 12.05(C).
Furthermore, the record is unclear as to why the ALJ found that
plaintiff did not meet the listing when she satisfied all three prongs
of the statute.   On remand, the ALJ should recontact Dr. Roman to
reconcile her opinion that plaintiff was capable of employment when
her I.Q. assessment effectively rendered plaintiff disabled.  Mayes v.
Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001)(ALJ's duty to develop
the record is triggered when there is ambiguous evidence or the record
is inadequate to allow for proper evaluation of the evidence).

**B.   Remand Is Required to Remedy the Defects in the ALJ's Decision
and to Supplement the Record**

Remand for further proceedings is appropriate where additional
proceedings could remedy defects in the Commissioner's decision.  Kail
v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984).   Remand for payment
of benefits is appropriate where no useful purpose would be served by
further administrative proceedings, see Kornock v. Harris, 648 F.2d
525, 527 (9th Cir. 1980); where the record has been fully developed,
see Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); or where
remand would unnecessarily delay the receipt of benefits, see Bilby v.
Schweiker, 762 F.2d 716, 719 (9th Cir. 1985).

The Ninth Circuit has held that where there are no outstanding
issues that must be resolved before a proper disability determination
can be made, and where it is clear from the administrative record that
the ALJ would be required to award benefits if the claimant's
testimony were credited, the Court will not remand solely to allow the
ALJ to make specific findings regarding that testimony.  See Varney v.
Secretary of Health & Human Servs., 859 F.2d 1396, 1402 (9th Cir.
1988).

1   Here, remand for further proceedings is appropriate to allow the

2   ALJ to fully develop the record by recontacting Dr. Roman to determine

3   why plaintiff did not meet Listed Impairment 12.05(C) when the medical

4   record indicated that she satisfied all three prongs statute.[4]  Once

5   the ALJ has done so, he must decide whether plaintiff's impairments

6   prevent her from performing her past relevant work.   If the ALJ

7   concludes that plaintiff cannot perform her past relevant work, the

8   ALJ must then decide whether plaintiff retains the residual functional

9   capacity to perform work that exists in significant numbers in both

10  the local and national economies.

11

12                              **ORDER**

13      The Court, therefore, VACATES the decision of the Commissioner of

14  Social Security Administration and REMANDS this action for further

15  administrative proceedings consistent with this Memorandum Opinion and

16  Order.

17  **LET JUDGMENT BE ENTERED ACCORDINGLY**

18

19  DATED: April 3, 2006

                                  _____/s/_____
20                                JENNIFER T. LUM
                                  UNITED STATES MAGISTRATE JUDGE

21

22

23  _____

24      [4]  Plaintiff lists another claim of error in the ALJ's
    decision, namely that the ALJ erred in finding that plaintiff
25  could perform work at Step 5 of the sequential evaluation
    process.  As explained above, the ALJ's error in finding that
26  plaintiff did not meet Listed Impairment 12.05(C) constitutes
    sufficient reason to remand this case.  Moreover, depending on
    the outcome of the proceedings on remand, the ALJ will have to
27  address plaintiff's remaining issue again.  In any event, the ALJ
    should consider plaintiff's remaining argument when determining
28  the merits of plaintiff's case on remand.